UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 3:14-CV-00686

AMANTHA WAGNER                                                                                          PLAINTIFF

V.

ELLEN HANNIFAN and                                                                                   DEFENDANTS
SHELTER MUTUAL INSURANCE COMPANY

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion to Remand [DN 6]. Fully briefed, this matter is ripe for decision. For the following reasons, the Motion to Remand is **GRANTED**.

### I. BACKGROUND

This is one of several cases filed across Kentucky against Shelter Mutual Insurance Company ("Shelter") and its claims adjustors based on their allegedly unlawful procedures in settling claims with minors. Here, Plaintiff Amantha Wagner (citizen of Kentucky) sued Shelter (citizen of Missouri) and one of its insurance adjusters, Ellen Hannifan (citizen of Kentucky), in Jefferson Circuit Court.

On June 14, 2008, Jonathan Fletcher was driving his wife, Amy Fletcher, and stepdaughter, Amantha Wagner ("Wagner"),[1] in Jefferson County, Kentucky, when an uninsured driver rear-ended their vehicle. (Shelter Notes Report for Fletcher Claim [DN 6-3] 1–2.) When the accident occurred, they had been on the way to the hospital to have Wagner seen for a possible concussion that she may have received at softball practice. (Id. at 2.) They continued to the hospital following the accident. At the hospital, Wagner was treated for the concussion, as

---

[1] Amantha Wagner was a minor 13 years of age when the accident occurred.

well as for neck and back pain from the accident. (Id. at 2–3.) Mr. Fletcher had uninsured motorist insurance coverage with Shelter, so he made a claim for his stepdaughter. (Id. at 1.)

Shelter assigned Casualty Adjuster Ellen Hannifan ("Hannifan") to handle the claim. (Id.) Hannifan determined that Wagner was properly entitled to uninsured motorist coverage under her stepfather's policy. (Id.) On September 8, 2008, Hannifan verbally offered Mrs. Fletcher $1500 to settle Wagner's claim. (Id. at 3.) Following that conversation, Hannifan sent Mrs. Fletcher a cover letter, which stated that enclosed was "[Shelter's] release for $1500 for Amantha's Uninsured Motorist claim. We can forward our draft upon return of the signed release." (Sept. 8, 2008 Letter [DN 6-6].) The enclosed "C-109.8-C" form was labeled "Indemnifying Release (Minors) Underinsured/Uninsured Motorist." (See Indemnifying Release (Minors) Underinsured/Uninsured Motorist [DN 6-5].) This form purported to "fully settle[] and discharge[] all claims against [Shelter]." (Id.) On September 10, 2008, Wagner's parents, Mike Wagner and Amy Fletcher, signed the indemnifying release. (See id.) Around September 23, 2008, Hannifan received the executed release, and thereafter sent Mrs. Fletcher the draft for $1500. (Shelter Notes Report for Fletcher Claim [DN 6-3] 3.) No court approval was sought or obtained for this settlement.

On September 8, 2014, Plaintiff filed this action in Jefferson Circuit Court against Defendants Hannifan and Shelter. This case has its origins in Adkins v. Shelter Mutual Insurance Company, No. 5:12-CV-173-KKC (E.D. Ky.). Adkins suffered injuries from a car accident. Adkins v. Shelter Mut. Ins. Co., No. CIV.A. 5:12-173-KKC, 2014 WL 4231230, at *1 (E.D. Ky. Aug. 26, 2014). Shelter issued a $500 settlement to then 17-year-old Adkins through her mother and without a court order. The settlement was accompanied by a substantially similar

release containing the same misleading language, id. at *6, as Hannifan gave to Wagner.[2] Once Adkins turned 18, she contacted an attorney, filed suit against Shelter, and obtained a higher settlement, notwithstanding the release. Id. at *1. In Adkins, Shelter was ordered to produce approximately 100 claim files involving the claims of minors that were not court approved. Id. Plaintiff's claim file was one of the files Shelter produced pursuant to the court order.

In her complaint, Plaintiff asserts several causes of action related to the June 14, 2008 accident and the subsequent handling of her bodily injury claim. Of the ten claims Plaintiff filed against Shelter,[3] only five also named Hannifan as a defendant: negligence/gross negligence (Count VI), fraud in the inducement (Count VII), fraud by omission (Count VIII), intentional infliction of emotional distress (Count IX), and negligent misrepresentation (Count X). (See Compl. [DN 1-2] Counts VI–X.) In particular, Plaintiff claims that Hannifan and Shelter committed fraud and made false representations in the terms and description of the release form. (Id. ¶ 58.) Plaintiff also asserts that Hannifan and Shelter were negligent and committed fraud by omission by settling a claim of less than $10,000 with a minor without a court order, in violation of KRS 387.280. (Id. ¶ 56.)

On October 10, 2014, Defendants removed this action from the Jefferson Circuit Court to this Court alleging federal diversity jurisdiction. (Defs.' Removal Notice [DN 1] ¶ 3.) They acknowledge that both Plaintiff Wagner and Defendant Hannifan are citizens of Kentucky. (Id.) They contend, however, that the Court should ignore Hannifan's citizenship for diversity

---

[2] Hannifan gave Wagner Form C-108.9-C ("Indemnifying Release (Minors) Underinsured/Uninsured Motorist"). According to Shelter's Claims Adjusting Guidelines, this form is similar to the C-106-C form ("Indemnifying Release (Minors)") that was at issue in Adkins, as well as R.H. ex rel. Gunter v. Buffin, No. CIV.A. 14-150-ART, 2014 WL 7272757 (E.D. Ky. Dec. 18, 2014), except it is used for Underinsured or Uninsured Motorist claims. (See Shelter Claims Adjusting Guidelines [DN 6-11].)

[3] Plaintiff alleged breach of contract (Count I), violation of Kentucky's Unfair Claims Settlement Practices Act, KRS 304.12-230 (Count II), common law bad faith (Count III), violation of the Kentucky Consumer Protection Act, KRS 367.170 (Count IV), and negligent training and supervision (Count V) against Shelter only. (Compl. [DN 1-2] Counts I–V.)

purposes because Plaintiff fraudulently joined her to this suit. Defendants claim that Kentucky law only permits claims against insurance companies for bad faith; because Plaintiff asserted claims against Hannifan for torts other than bad faith, Defendants argue, those claims have no colorable basis. Further, Defendants argue that Kentucky law did not require them to obtain court approval of their settlements with the minor Plaintiff.

On November 6, 2014, Plaintiff filed this Motion to Remand [DN 6] the case to Jefferson Circuit Court, arguing that she has a colorable claim against the non-diverse defendant, the insurance adjuster. Plaintiff therefore contends that this Court lacks subject matter jurisdiction to hear her claims because complete diversity between the parties did not exist at the time of removal.

## II. STANDARD OF REVIEW

The question raised in this motion to remand is whether Ellen Hannifin was fraudulently joined in this action to prevent complete diversity. "Fraudulent joinder occurs when the non-removing party joins a party against whom there is no colorable cause of action." Saginaw, 576 F.3d at 624. "To prove fraudulent joinder, the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law." Coyne, 183 F.3d at 493 (citing Alexander v. Elec. Data Sys. Corp., 13 F.3d 940, 949 (6th Cir. 1994)). The plaintiff's motive for suing the non-diverse defendant is irrelevant to the fraudulent joinder analysis. Jerome-Duncan, 176 F.3d at 907. "Therefore the question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved." Probus v. Charter Commc'ns, LCC, 234 F. App'x 404, 407 (6th Cir. 2007) (quoting Alexander, 13 F.3d at 949). Coyne provides the relevant standard:

> [I]f there is a colorable basis for predicting that a plaintiff may recover against non-diverse defendants, this Court must remand the action to state court. The

4

district court must resolve "all disputed questions of fact and ambiguities in the controlling state law in favor of the non removing party." [Alexander, 13 F.3d at 949.] All doubts as to the propriety of removal are resolved in favor of remand. Coyne, 183 F.3d at 493. Thus, the removing party bears a "particularly heavy burden" of proving fraudulent joinder—"[t]he combination of the 'colorable' standard with the requirement that all ambiguities of state law are to be resolved in favor of the non-removing party presents a significant hurdle." Kent State Univ. Bd. of Trs. v. Lexington Ins. Co., 512 F. App'x 485, 489–90 (6th Cir. 2013). The fraudulent joinder standard is even more favorable to Plaintiffs than the standard for ruling on a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). See Casias, 695 F.3d at 433.

### III. DISCUSSION

In determining whether removal of Plaintiff's claims to federal court was proper, the Court must determine whether Defendants have presented sufficient evidence that Plaintiff "could not have established a cause of action" against Defendant Hannifan under Kentucky law. Coyne, 183 F.3d at 493. If there is a colorable basis for predicting that Plaintiff may recover against Defendant Hannifan, the Court must remand the action to state court. Id.

As noted, this case is one of several other similar cases pending against Shelter and its adjusters across the state—at least three of which involve the same attorneys on either side. While the specific factual circumstances may vary, Shelter has consistently made two arguments that are relevant to this motion: (1) a tort claim other than bad faith cannot lie against an insurance company or, presumably, one of its adjusters; and (2) Shelter had no obligation to obtain district court approval of its settlements with minors. Three federal district courts have recently rejected both of these arguments. See A.J. ex rel. Joy v. King, No. 3:14-CV-00704-JGH (W.D. Ky. Jan. 13, 2015) (rejecting arguments and granting remand); R.H. ex rel. Gunter v. Buffin, No. CIV.A. 14-150-ART, 2014 WL 7272757 (E.D. Ky. Dec. 18, 2014) (rejecting

arguments and granting remand); see also Adkins v. Shelter Mut. Ins. Co., No. CIV.A. 5:12-173-KKC, 2014 WL 4231230, at *1 (E.D. Ky. Aug. 26, 2014) (rejecting arguments in context of applying Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim standard).

Defendants argue that Kentucky law bars all tort claims but bad-faith claims against insurance companies. Although Defendants do not directly address the distinction, they seem to assume that the same prohibition applies to insurance adjusters. Therefore, because Plaintiff's claims against Defendant Hannifan are for torts other than bad faith, Defendants argue, those claims have no colorable basis. For support, Defendants trace Kentucky's long common law history of bad-faith claims against insurance companies, see, e.g., Georgia Casualty Co. v. Mann, 46 S.W.2d 777, 780 (Ky. 1932) ("[W]e agree with the courts that hold that, if an insurer in refusing to settle acts in bad faith, it may become liable in excess of the policy limit."), as well as Kentucky's more recent Unfair Claims Settlement Practices Act ("UCSPA"), KRS 304.12-230. (Defs.' Resp. [DN 7] 7–10.)

However, this Court agrees with Judge Thapar that "defendants' authorities do not go as far as they would like." R.H. ex rel. Gunter, 2014 WL 7272757, *3; see also A.J. ex rel. Joy, No. 3:14-CV-00704-JGH, slip op. at 4. None of the cases Defendants cite for its proposition explicitly bar other torts against insurance companies; "[i]ndeed, much of the language the defendants paint as comprehensive is actually limited to the context of bad-faith claims." R.H. ex rel. Gunter, 2014 WL 7272757, at *3; see, e.g., Motorists Mut. Ins. Co. v. Glass, 996 S.W.2d 437, 451 (Ky. 1997) (emphasis added) ("Mere negligent failure to settle within the policy limits or errors of judgment are insufficient *to constitute bad faith*."); Harvin v. U.S. Fid. & Guar. Co., 428 S.W.2d 213, 215 (Ky. 1968) (emphasis added) (declining to recognize a cause of action for "negligent failure to settle within the policy limits" because, "*in cases of this type* . . . . there *must*

6

*be a showing of 'bad faith'"*); United Servs. Auto. Ass'n v. Bult, 183 S.W.3d 181, 186 (Ky. Ct. App. 2003) (emphasis added) ("Evidence of mere negligence or failure to pay a claim in timely fashion will not suffice to support *a claim for bad faith*."). Further, as Judge Thapar noted, "there is no reason to think that the UCSPA preempts common law causes of action. The defendants have provided no authority demonstrating statutory preemption." R.H. ex rel. Gunter, 2014 WL 7272757, at *3 (internal citation omitted); see also Adkins, 2014 WL 4231230, at *7 ("Shelter has cited no authority for its argument that the UCSPA, KRS 304.12–230, 'preempts' all negligence claims. Unlike the UCC, the UCSPA is a single statute, rather than a comprehensive code of law.").

Additionally, the Court notes that, contrary to Defendants' assertions, some Kentucky courts have entertained negligent misrepresentation and fraud claims against insurance companies and insurance adjusters without relying on the bad-faith standard. See, e.g., Abney v. Ky. Farm Bureau Mut. Ins. Co., No. 2009-CA-000600-MR, 2010 WL 668749, at *3 (Ky. Ct. App. Feb. 26, 2010). In Abney, as here, the plaintiff sued his insurance company and insurance adjuster for negligent misrepresentation and fraud, alleging that they misrepresented the effect of a release. Id. at *1–2. The plaintiff alleged that the adjuster advised him—incorrectly—that the insurance company's release would not bar future claims against other parties. Id. at *1. The court did not dismiss the suit for failure to state a claim. Id. The court did not even apply a bad-faith standard. Id. Instead, the court granted summary judgment for the defendants because it concluded that the plaintiff "could not produce any evidence at trial to show that [the insurance adjuster] knew, or should have known, that the release would also discharge any claims" against other parties. Id. at *3.

Accordingly, the Court agrees with the court in A.J. ex rel. Joy, and finds that, at best, Kentucky law is ambiguous as to whether a plaintiff may sue an insurance company and its adjuster for torts other than bad faith. See A.J. ex rel. Joy, No. 3:14-CV-00704-JGH, slip op. at 5; see also R.H. ex rel. Gunter, 2014 WL 7272757, at *4.

Plaintiff claims that Hannifan committed fraud and made false representations by sending a release form that purported to waive all future claims. Defendants do not specifically address this claim[4] in their brief. According to Plaintiff, Defendants designed the ploy to trick unsophisticated parties into foregoing legitimate claims. While the plain language of the release states it "fully settles and discharges all claims against [Shelter]," (see Indemnifying Release (Minors) Underinsured/Uninsured Motorist [DN 6-5]), Shelter's Claims Adjusting Guidelines state that the release only settles the parents' claim, not the minor's claim, (see Shelter Claims Adjusting Guidelines [DN 6-11]). Based on these same facts, the court in Adkins found the release "itself was a material misrepresentation." Adkins, 2014 WL 4231230, at *6. Faced with a motion to amend, the Adkins court found that the plaintiff's fraudulent and negligent misrepresentation claims survived the standard for a motion to dismiss for failure to state a claim. Id. at *5–7. Because Adkins did not sue her insurance adjuster in addition to Shelter, the issue of fraudulent joinder never arose in that case.

Plaintiff also claims that Hannifan defrauded her by initiating settlement of a claim of less than $10,000 with a minor without a court order, in violation of Kentucky law—a law specifically designed to protect minors during settlement negotiations. See KRS 387.280. Defendants claim they are under no obligation to seek a court order before settling such a claim

---

[4] Defendants' argument, as discussed, is that the relevant standard of care applicable is bad faith and therefore that all tort claims other than bad faith cannot lie against an insurance company and, presumably, an insurance adjuster. This Court concluded, however, that Kentucky law is ambiguous as to whether insurance companies and insurance adjusters may be sued for torts other than bad faith.

8

with a minor. (See Defs.' Resp. [DN 7] 4.) A court of the Eastern District of Kentucky has already disagreed. Adkins, 2014 WL 4231230, at *1 (citing KRS 387.280) ("Kentucky law requires court approval for settlements involving minors."). The statute provides, in pertinent part:

> When a minor . . . , having no guardian or conservator, is entitled to receive a sum not exceeding ten thousand dollars ($10,000), exclusive of interest, . . . in the settlement of any estate or from any other source, the person having custody of the minor . . . may settle or compromise the dollar amount when in the interest of the minor . . . . The court in which the action is pending, or, if the sum does not derive from the action, the District Court, may order the sum to be paid to the person having custody of the minor . . . . Before entering the order, the court shall approve any settlement or compromise . . . . A release executed by the person to whom the court has ordered the sum paid shall have the same effect as a release by a duly appointed guardian.

KRS 387.280.[5] The Court finds the statutory language is at least ambiguous as to whether Defendants needed to obtain court approval before settling with Plaintiff. See A.J. ex rel. Joy, No. 3:14-CV-00704-JGH, slip op. at 6; see also R.H. ex rel. Gunter, 2014 WL 7272757, at *4.

It is not Plaintiff's obligation, at this stage, to prove that her claims against Hannifan will prevail or even that they are colorable. Kent State Univ. Bd. of Trs., 512 F. App'x at 489. The burden here belongs to Defendants, and it is a heavy one. Id. at 489–90. To the extent that Kentucky law remains ambiguous on Plaintiff's claims against Hannifan, the Court must resolve those ambiguities in favor of remand. Coyne, 183 F.3d at 493. Accordingly, the Court finds that Defendants have failed to demonstrate that Plaintiff "could not have established a cause of action" against Defendant Hannifan under Kentucky law. Therefore, this action is remanded back to Jefferson Circuit Court.

---

[5] In KRS 387.280, "'Guardian' means an individual, agency, or corporation appointed by the District Court to have care, custody, and control of a minor and to manage the minor's financial resources" and "'Conservator' means an individual, agency, or corporation appointed by the District Court to manage the financial resources of a minor." KRS 387.010(3), (5). Plaintiff has no guardian or conservator within the meaning of these statutes; the provisions of KRS 387.280 were therefore applicable to Plaintiff at the time of the settlement in 2008.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand [DN 6] is **GRANTED**.

*Joseph H. McKinley*

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

March 6, 2015

cc: counsel of record
Jefferson Circuit Court